# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RENEE WEISS, et al.,                )        CASE NO.  5:22-cv-160
                                    )
                                    )
                    PLAINTIFFS,     )        JUDGE SARA LIOI
                                    )
vs.                                 )
                                    )        **MEMORANDUM OPINION**
                                    )
LOWE'S COMPANIES, LLC               )
*Originally named as* Lowe's        )
Companies, Inc.,                    )
                                    )
                                    )
                    DEFENDANT.      )

Before the Court is the motion for summary judgment of defendant, Lowe's Companies, LLC,[1] ("Lowe's" or "defendant"). (Doc. No. 67, (Motion).) Plaintiff, Renee Weiss ("Weiss" or "plaintiff"), filed a response in opposition (Doc. No. 71, (Opposition)) and Lowe's replied. (Doc. No. 78, (Reply).) For the reasons discussed herein, Lowe's motion for summary judgment is granted and the case is dismissed.

---

[1] Weiss originally brought her claims against an incorrect party defendant ("Lowe's Companies, Inc."). (Doc. No. 1.) Upon the defendant's request (Doc. No. 8, at 1), the Court ordered Weiss to amend her complaint to list the proper party defendant ("Lowe's Companies, LLC"). (Doc. No. 11, at 4. All page number references within this memorandum opinion are to the consecutive page numbers applied to each individual document by the electronic filing system.) Weiss failed to comply with the Court's order. (*See* Doc. No. 12.) Weiss incorrectly amended her complaint to make a third entity ("Lowe's Home Centers, LLC") the party defendant. (*Id.* at 1.) Neither party raised this issue with the Court. Despite Weiss' error, it is clear that Lowe's Companies, LLC was the real party in interest for this litigation. After the incorrect amended complaint was filed, the defendant continued to vigorously pursue its interests in this matter. This included producing discovery documents (*see, e.g.*, Doc. No. 63), taking multiple depositions (*see* Doc. No. 55), and filing the instant motion for summary judgment. (Doc. No. 67.) Defendant had notice of these proceedings and fully participated. Thus, per its earlier order, the Court recognizes Lowe's Companies, LLC as the party defendant in this case, notwithstanding Weiss' previously unaddressed failure to rectify its pleading error.

## I.    BACKGROUND

The facts of this case are straightforward and largely undisputed. On December 30, 2019, Weiss went into a Lowe's store located in Alliance, Ohio to purchase construction materials for her business. (Doc. No. 55-5 (Deposition of Renee Weiss), at 10:2–25.) Among other materials, Weiss sought narrow, six-foot long pieces of metal. (*Id*. at 10:21–23, 14:9–15.) After she found the Hillman[2] display section with this type of metal, Weiss picked out a particular piece of metal and attempted to remove it from the display. (*Id*. at 11:7–17.) Weiss focused her attention on the piece of metal itself, and not what was above it, because she did not want to cut her hands on the potentially sharp metal. (*Id*. at 19:7–9.) Weiss lifted the metal directly up to remove it from the Hillman display. (*Id*. at 14:16–20.) Weiss asserts this straight up lifting motion, as opposed to an angled lifting motion, was necessary because the metal would not bend and the design of the Hillman display prevented an angled lift. (*Id*. at 14:16–15:1.) After Weiss lifted the piece of metal, "all of a sudden" steel pipes fell onto her from the wire rack above the Hillman display, causing her numerous injuries. (*Id*. at 11:15–18.)

Prior to lifting the metal directly up, Weiss observed "something" above the display section, but, at the time of her deposition, she could not remember if she saw that there was a wire rack used for storage. (*Id*. at 15:6–8.) In any event, other merchandise, including steel pipes,[3] were stored on the wire rack above the display. (*Id*. at 18:5–7.) Observing this particular wire rack after the incident, Weiss described it as "like [the other racks] throughout the store as far as I know." (*Id*. at 18:25.) No one took photos of the Hillman display on the day of the incident. (*See id*. at 16:7–8 (Weiss stating that she took no photos the day of the incident); Doc. No. 55-3 (Deposition

---

[2] Hillman is a company which sells these types of materials.

[3] When asked directly in her deposition, Weiss stated that she did not know what material the pipes were made of, but that they were "definitely" metal. (*See* Doc. No. 55-5, at 15:23–16:3.) In her affidavit, however, Weiss states that the pipes were steel. (*See* Doc. No. 76-1 (Affidavit of Renee Weiss) ¶ 5.) Because the merchandise Weiss sought to purchase on the day of the accident was also a metal object, the Court shall refer to the objects that fell on Weiss as "steel pipes" solely for the purpose of clearly distinguishing the two objects.

of Hayley Alexander), at 29:2–6 (Lowe's front-end supervisor at the time of incident stating that she did not take any photos and that she was unaware of any Lowe's employees taking photos).) Nonetheless, Lowe's submitted photos of a substantially similar Hillman display.[4] (*See* Doc. No. 67, at 5–6.) The photos make clear that any person approaching the Hillman display, or attempting to retrieve merchandise from the display, could see, both, the wire rack overhead and the merchandise stored on the wire racks. (*See id.*)

The falling of the steel pipes was not mere coincidence; Weiss concedes that the pipes did not fall on their own accord. (Doc. No. 76-1 ¶ 5.) Instead, Weiss acknowledges there is "only one possible way the steel pipes could have rolled off the shelf above: . . . [the metal piece she was holding] penetrate[d] the wire shelf above and contact[ed] the unbound steel pipes." (*Id.*) Weiss cannot remember how hard she struck the pipes, but she knows it was not with a large amount of force. (*See* Doc. No. 55-5, 21:4–8.) Weiss also remembers that she did not see the steel pipes above while retrieving the piece of metal because she did not look up when she lifted up. (*Id.* at 19:5–9.)

At the time of the incident, an unnamed customer was the only other person in the aisle. (*Id.* at 12:18–13:19.) There were no Lowe's employees in the aisle or the immediate vicinity. (*Id.*) Further, Weiss did not observe any person touch the display, the wire rack above it, or any merchandise in either area prior to this incident. (*Id.* at 13:3–5, 13:20–14:5.) The record contains no evidence for how long the steel pipes were in their present state prior to Weiss' arrival.

---

[4] When Weiss reviewed the first photo of the Hillman display in her deposition she stated that "[a]s far as [she] know[s]" the photo looked substantially similar to what she encountered on the day of the incident (Doc. No. 55-5, at 17:25–18:4), but the second photo only looked only "[s]omewhat similar." (*Id.* at 19:22–20:1.) When she was asked about the difference between the photo and how the display looked on the day of the incident, Weiss could not articulate any difference. (*Id.* at 20:2–4.) Other witnesses stated that the picture of the Hillman display looked similar to its state on December 30, 2019. (*See* Doc. No. 55-3, at 60:7–11.) Given the lack of specificity in Weiss' comments, there is no evidence to suggest that a genuine dispute exists over a material aspect of the Hillman display's appearance in Lowe's photos compared to the actual Hillman display on December 30, 2019. *See Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). Additionally, Weiss does not claim the photographs are not substantially similar in her opposition. (*See generally* Doc. No. 76.) As such, the Court considers both photos substantially similar to how the Hillman display looked on the date of the incident for the purposes of this motion.

After the pipes fell on Weiss, Matthew Ashmore ("Ashmore"), who was then employed by Lowe's, promptly came to Weiss' aid. (*Id.* at 11:24–25; *see also* Doc. No. 55-1 (Deposition of Matthew Ashmore), at 11:1–9.) Shortly after arriving, Weiss remembers Ashmore commenting that the steel pipes "never should have been stacked that way" and that their arrangement was "an accident waiting to happen."[5] (Doc. No. 55-5, at 12:1–3.) When asked at his deposition, Ashmore testified that he only "vaguely remember[ed] that something happened [on the date in question], but [he didn't] have much memory of the specific incident" involving Weiss. (Doc. No. 55-1, at 8:9–14.) He stated he did not know who put the steel pipes above the Hillman display or when they were put there. (*Id.* at 14:18–22.) More to the point, the record contains no evidence that Ashmore ever observed the steel pipes above the Hillman display prior to the incident involving Weiss. During his deposition, Ashford also testified that he could not remember how the pipes were displayed, how many pipes (or any product) were on the rack, and if any customers had disturbed the product on top of the rack prior to the incident involving Weiss. (*Id.* at 15:2–8.)

Returning to the day of the incident, another Lowe's employee, Brok McIlvain ("McIlvain"), also came to the aisle after the steel pipes fell and, together, McIlvain and Ashmore brought Weiss to the customer service window, where the front-end supervisor, Hayley Alexander ("Alexander"), asked her questions and completed an incident report. (Doc. No. 55-5 at 12:5–10; *see also* Doc. No. 55-3, at 6:25–7:2, 19:16–23.) After the completion of this report, Weiss purchased her items and left the store under her own power. (Doc. No. 55, at 12:11–13.) Medical assistance was not sought, nor was it provided. (*See* Doc. No. 55-3, at 41:21–42:1.)

---

[5] Ashmore was not asked about the comments he allegedly made to Weiss, nor did he mention any in his deposition. (*See generally id.*) At one point, Ashmore commented that "in general" he thought it was a bad idea to stack metal on the wire racks because it was unsafe (*id.* at 12:11–17), but he later clarified that this was based on "personal opinion" not "Lowe's policy[.]" (*Id.* at 14:6–13.)

4

Weiss filed her claims against Lowe's in the Stark County Court of Common Pleas on December 27, 2021. (Doc. No. 1.) The original complaint contained two causes of action,[6] both alleging that Lowe's was negligent in failing to adequately maintain the store's premises which resulted in Weiss' injuries and associated expenses. (*Id*. ¶¶ 5, 9.) Lowe's timely removed the action to this Court on January 31, 2022. (*Id*.) On April 1, 2022, Weiss moved to amend her complaint to join the Ohio Department of Medicaid ("ODM") as a party defendant, which the Court granted in part. (*See* Doc. No. 7, at 1; Doc. No 11.) The Court permitted Weiss' to join ODM, but only as a party plaintiff because ODM's interests "aligned" with Weiss' interests and "ODM's lien for the benefits it paid out to Weiss for those injuries is secondary to the purpose of the lawsuit." (Doc. No. 11, at 3–4 (internal quotation marks and citations omitted).) Despite the Court's order, Weiss improperly attempted to add ODM as a party defendant. (*See* Doc. No. 12, at 1.) None of the parties raised this issue with the Court. Given the Court's clear order that Weiss' could only join ODM as a party plaintiff, the Court recognizes ODM as a party plaintiff in this matter.

On May 15, 2023, Lowe's moved for summary judgment in its favor on Weiss' claims. (Doc. No. 67.) On June 5, 2023, Weiss filed an opposition (Doc. No. 76), and on June 14, 2023, Lowe's filed a reply. (Doc. No. 78.) The matter is now ripe for this Court's review.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any

---

[6] Although not entirely clear, the difference between Weiss' first two causes of actions appears to be limited to the damages she seeks to recover from Lowe's. (*Compare* Doc. No. 12 ¶ 7 (requesting the "[e]ighty-two thousand seven hundred fifty and 57/100 dollars ($82,750.57)" Weiss claims to have incurred in medical expenses due to injuries related to Lowe's alleged negligence and her expectations that she will incur additional expenses in the future) *with id*. ¶¶ 10–12 (requesting relief for general "physical injuries, anxiety, fear, and physical and mental pain and suffering[;]" loss of "enjoyment of life and the ability to perform everyday activities[;]" and "expenses in treatment").) In any event, in their briefing the parties do not draw a distinction between these two causes of actions. Both parties treat Weiss' allegations as a single claim of premise liability against Lowe's. Therefore, the Court shall treat Weiss' first two cause of actions as a single claim.

material fact and the movant is entitled to judgment as a matter of law." "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (noting that summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial).

Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (citing *Anderson*, 477 U.S. at 247–48) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

Because the Court is sitting in diversity, Ohio substantive law applies. *See, e.g., Reid v. Volkswagen of Am., Inc.*, 575 F.2d 1175, 1176 (6th Cir. 1978) (per curium) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

## III.   DISCUSSION

Lowe's is entitled to summary judgment on Weiss' premise liability claim. Under Ohio law, "in order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*,

423 N.E.2d 467, 469 (Ohio 1981) (citing *Feldman v. Howard*, 226 N.E.2d 564, 567 (Ohio 1967)).

For premises liability claims, the scope of the landowner's duty to an entrant is defined by the

entrant's status as a trespasser, licensee, or invitee. *See Gladon v. Greater Cleveland Reg'l Transit

Auth.*, 662 N.E.2d 287, 291 (Ohio 1996) (citation omitted). Ohio law defines a business invitee as

a person who is on the premises of another by invitation, express or implied, for some purpose

which is beneficial to the owner. *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986); *Mota v.

Gruszczynski*, 968 N.E.2d 631, 636 (Ohio Ct. App. 2012). Here, the parties agree that Weiss was

a business invitee. (Doc. No. 67, at 11; Doc No. 76, at 6.)

### A.  Lowe's duty to Weiss

In its motion for summary judgment, Lowe's contends that it had no duty to Weiss related

to the steel pipes because the pipes presented an open and obvious danger.[7] (*See* Doc. No. 67, at

13 ("Lowe's had no duty to warn Weiss of any open and obvious dangers inside the store.").) To

support its contention, Lowe's cites to numerous cases applying Ohio law which dismissed

premise liability claims stemming from falling merchandise injuries under the open and obvious

doctrine. (*Id.* at 11–18.) In her response, Weiss contends that there is a genuine issue of material

fact as to whether the steel pipes amounted to an open and obvious danger. (Doc. No. 76, at 8.)

Weiss recognizes the case law cited by Lowe's, but claims that those cases contain a common fact

which is not present in this case: "the items that injured the customers were in contact with the

items they were shopping for—or were immediately adjacent in the same area." (*Id.* at 10.) Lowe's

replies to Weiss' argument by stating "[t]his is a distinction without a difference, and when the

actual evidence is reviewed, it is not even a distinction at all." (Doc. No. 78, at 2.) Lowe's is

---

[7] In addition to this argument, Lowe's also claims it owed no duty to Weiss as it relates to the steel pipes because Weiss assumed the risk of the pipes falling down when she retrieved the metal piece from the Hillman display. (*See* Doc. No. 67, at 22–23.) Because the Court finds that the open and obvious doctrine applies and that Lowe's owed Weiss no duty for the reasons discussed below, it does not address this additional argument.

correct. This case falls well within the bounds of Ohio's open and obvious doctrine and, thus, Lowe's did not owe a duty Weiss as it relates to the steel pipes.

In general, Ohio "shopkeeper[s] owe[] business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that [their] customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985) (citing *Campbell v. Hughes Provision Co.*, 90 N.E.2d 694, 695 (Ohio 1950)). With that being said, this duty does not convert shopkeepers into "an insurer of a customer's safety." *See id.* Relatedly, "a premises-owner owes no duty to persons entering [the] premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1089 (Ohio 2003) (citing *Sidle v. Humphrey*, 233 N.E.2d 589, ¶ 1 syllabus (Ohio 1968)). For these types of dangers, "the hazard itself serves as a warning[]" and the shopkeeper "may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992). For this reason, "[t]he open and obvious doctrine is a complete bar to any negligence claim." *Smrtka v. Boote*, 88 N.E.3d 465, 470 (Ohio Ct. App. 2017) (citing *Armstrong*, 788 N.E.2d at 1090).[8]

---

[8] At least one Ohio Court of Appeals recognizes an express exception to the open obvious doctrine when "the owner had superior knowledge of the particular danger which caused the injury. . . because in such a case the [business] invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate." *See Smrtka v. Boote*, 88 N.E.3d 465, 470 (Ohio Ct. App. 2017) (internal quotations and citation omitted). Other Ohio Courts of Appeals, however, have rejected this exception to the open and obvious doctrine or limited its application to its original factual setting: "slip and fall cases involving natural accumulations of ice and snow." *See Ray v. Wal-Mart Stores, Inc.*, No. 08CA41, 2009 WL 278323, at *5 (Ohio Ct. App. 2009) (collecting cases). The Court is not aware of any Ohio Supreme Court case addressing this potential exception to the open and obvious doctrine, but given the inherent tension in describing a hazard as both "open and obvious" and one that a business patron "may not reasonably be expected to protect himself from[,]" the Court does not anticipate that Ohio Supreme Court would adopt this exception. *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012) ("Federal courts should be extremely cautious about adopting substantive innovation in state law."). Additionally, Weiss does not contend in its opposition that superior knowledge is an applicable exception to the open and obvious doctrine. (*See generally* Doc. No. 76, at 8–11.) For these reasons, the Court will not consider this unestablished exception to the open and obvious doctrine for the present motion.

For a danger to be classified as open and obvious under Ohio law, it cannot be hidden or unobservable upon an ordinary inspection. *See Kirksey v. Summit Cty. Parking Garage*, No. Civ.A.22755, 2005 WL 3481536, at *3 (Ohio Ct. App. Dec. 21, 2005) (citations omitted). This does not mean, however, that a particular invitee needs to actually observe the dangerous condition for it to be considered open and obvious. *Smith v. Kroger Co.*, No. CA2010–09–233, 2011 WL 1458667, at *2 (Ohio Ct. App. Apr. 18, 2011) (collecting cases). The inquiry to determine whether a danger was open and obvious is an objective one. *See id*. Courts applying Ohio law will find an unobserved danger to be open and obvious when the invitee could have discovered the danger upon ordinary inspection. *See Kirksey*, 2005 WL 3481536 at *3. Courts regularly determine whether a danger was open and obvious on motions for summary judgment. *Dorsey v. Lowe's Home Centers, LLC*, No. 1:20-CV-2774, 2023 WL 2456587, at *6 (N.D. Ohio Mar. 10, 2023) ("In most situations, whether a danger is open and obvious presents a question of law.") (quoting *Aycock v. Sandy Valley Church of God*, No. 2006AP090054, 2008 WL 115829, at *4 (Ohio Ct. App. Jan. 8, 2008)).

Ohio courts frequently find an open and obvious danger in falling merchandise when a customer makes contact with the display holding the merchandise, or the merchandise itself, in a manner that causes the merchandise to fall. *See, e.g.*, *id.* at *7–9 (collecting cases). For example, in *McGee v. Lowe's Home Ctrs.*, a Lowe's patron who sought "pre-cut vinyl sheet flooring[,]" found the display holding the product in different colors and styles, and "push[ed] the different flooring from side to side[]" in search of her preferred variety. No. 06JE26, 2007 WL 2758668, at *1 (Ohio Ct. App. Sept. 21, 2007). After deciding on a particular sheet of flooring, the patron "lift[ed] the flooring up to get it off of the display[,]" but, before she could retrieve the product, "the display of flooring started to fall." *Id*. The patron was not able to avoid the falling merchandise and was injured. *Id*. The appellate court affirmed the trial court's grant of summary judgment for

the retailer defendant because while "no shopper particularly expects or desires to have a display come tumbling down on them while shopping in a store . . . in a warehouse self-help environment, there always remains a possibility that too much fumbling around through merchandise can create an unstable situation where items may become loose or shift positions." *Id.* at *4.

Other cases applying Ohio law have affirmed summary judgment on similar grounds. In *Sexton v. Wal-Mart Stores*, a customer grabbed two boxes of laundry detergent from a top shelf and two other boxes fell on top of her, hit her in the head, and caused injury. No. 98CA2603, 1999 WL 22632, at *1 (Ohio Ct. App. Jan. 14, 1999). The customer argued that the defendant "negligently stacked the boxes" and that this stacking caused the falling merchandise, but the court affirmed summary judgment for the defendant because "a reasonable person would have appreciated the danger inherent in removing merchandise from the top shelf of a display and would have sought to avoid the danger by asking a store associate for assistance in removing the merchandise." *Id.* at *5; *see also Hupp v. Meijer Stores Ltd. P'ships*, 05CE070047, 2006 WL 1085667, at *1 (Ohio Ct. App. Apr. 26, 2006) (affirming summary judgment for the retailer where a product, which "was not in physical contact with the [product the customer] removed[,]" fell because the display shelves "had shaken when [the customer] removed her merchandise"); *Bonner v. Glassman*, No. 96924, 2012 WL 112664, at *1 (Ohio Ct. App. Jan. 12, 2012) (affirming summary judgment for the retailer where packages of water bottles fell from large stacks because "[d]isturbing heavy cases that were stacked 'so high' constituted an obvious danger[]").

In this case, the potential danger presented by the merchandise, *i.e.*, the steel pipes stored above the display, was open and obvious. Neither party took photos of the Hillman display on the day of the incident. (*See* Doc. No. 55-5, at 16:7–8 (Weiss stating that she took no photos the day of the incident); Doc. No. 55-3, at 29:2–6 (Alexander stating the same).) Photos of a substantially similar Hillman display were submitted by Lowe's. (*See* Doc. No. 67, at 5–6.) The photos clearly

show the wire rack storing merchandise above the Hillman display. (*Id.*) Additionally, the wire rack was see-through and any merchandise stored on the rack was visible to customers approaching and retrieving products from the Hillman display. (*See id.*; Doc. No. 55-5, at 18:21–19:4.)

In fact, Weiss herself saw how the merchandise was stored on the wire rack in question and was able to describe it in some detail. (Doc. 55-5, at 16:9–17:1 (stating that the steel pipes were stacked parallel to the edge of wire rack, not perpendicular).) But Weiss did not look up at the rack until *after* she removed the metal pieces from the Hillman display, hit the steel pipes, and those steel pipes fell on her. (*See id.* at 17:2–5.) Thus, Weiss' comments about the steel pipes' positioning relate solely to their state after Weiss dislodged them from their earlier position.

Given the see-through nature of the overhead storage and the long and narrow nature of the piece of metal in the Hillman display, the danger was open and obvious. This Lowe's store was akin to the "warehouse self-help" shopping environment in *McGee*, and, just like that store, there was a possibility that too much "fumbling around" with the merchandise could lead to other merchandise falling. *See* 2007 WL 2758668, at *1. This is particularly true when a customer attempts to retrieve a long and narrow piece of merchandise that is roughly six feet in length and is shaped in such a way that it can "penetrate" the overhead storage rack that is only a couple of feet above it. (*See* Doc. No. 56-3, at 36:4–9 (Alexander providing a rough estimate that the wire rack was at least eight feet off of the ground).) Prior to lifting the piece of metal, or, at minimum, during the lifting, Weiss could have looked up to ensure she was not hitting whatever was above the piece of metal. She did not. (Doc. No. 55-5, at 19:5–9.) Because the Court's inquiry is an objective one (*Kirksey*, 2005 WL 3481536 at *3), Weiss' decision to not look up at any point prior to the steel pipes falling down does not alter the Court's analysis.

Weiss' claims of an improper display design are unhelpful to her contention that the open and obvious doctrine does not apply in this case. (*See* Doc. No. 55-5, at 14:16–24.) Weiss states

that the piece of metal she sought to buy was "rigid so you [couldn't] pull it at an angle just because it [was] in a bin." (*Id*. at 14:16–19.) Due to the nature of the metal and display which held it, Weiss claims "the display *required* [her] to lift the metal piece several feet in the air to get over the lip of the bin[.]" (Doc. No. 76-1 ¶ 5 (emphasis added).) Accepting this statement as true, as the Court must for the purposes of deciding Lowe's motion for summary judgment, the open and obvious danger of the merchandise above the Hillman display remains the same. Just like how a reasonable person would have "appreciated the danger inherent in removing merchandise from the top shelf of a display and would have sought to avoid the danger by asking a store associate for assistance in removing the merchandise[,]" a reasonable person in Weiss' position would have appreciated the inherent dangers in removing a long and narrow piece of metal by lifting it directly up if it inevitably required striking the wire rack above. *See Hupp*, 2006 WL 1085667, at *1. When presented with this seemingly unavoidable danger, a reasonable person would have sought assistance from a store associate. *See id*. The fact that Weiss decided not to seek assistance does not create a duty for Lowe's. In short, the open and obvious doctrine applies in this case and Lowe's did not owe a duty to Weiss.

The case law Weiss cites to oppose Lowe's motion for summary judgment does not change this analysis. (*See* Doc. No. 76, at 10–11.) Weiss relies on two cases, both of which refused to grant summary judgment for a retailer defendant: *Lopez* and *Dillon-Garcia*. (*Id*. (citing *Lopez v. Home Depot, USA, Inc.*, No. L–02–1248, 2003 WL 1962360 (Ohio Ct. App. Apr. 25, 2003); *Dillon-Garcia v. Marc Glassman, Inc.*, No. 86318, 2006 WL 302349 (Ohio Ct. App. Feb. 9, 2005)).) Beginning with *Lopez*, the Ohio Court of Appeals in that case distinguished its facts from other falling merchandise cases on two grounds, neither of which is applicable here. First, the person injured by the falling merchandise in that case, Ms. Lopez, was not the person retrieving merchandise from the store's display; her husband, Mr. Lopez, retrieved the merchandise. *Lopez*,

2003 WL 1962360, at *2. "Ms. Lopez was merely standing on the floor next to the stacks." *Id*. In this case, Weiss was retrieving the merchandise and was also struck by it. This distinction is not applicable. (Doc. No. 55-5, at 11:7–24.)

Turning to the second distinction made in *Lopez*, the merchandise Mr. Lopez searched through was "not in contact" with the merchandise that fell on Ms. Lopez. *Lopez*, 2003 WL 1962360, at *2. Like the first distinction, this fact is also not present in this case. Although the piece of metal Weiss sought to buy was not in contact with the steel pipes prior to Weiss arrival, according to Weiss, due to her own actions, the piece of metal contacted the steel pipes right before the pipes fell. (Doc. No. 76-1 ¶ 5.) Weiss concedes that this contact "was [the] only one possible way" the pipes could have fallen. (*Id*.) This case is not analogous to *Lopez*.

Weiss' reliance on *Dillon-Garcia* is similarly unavailing. In *Dillon-Garcia*, the plaintiff removed a can of spaghetti sauce from a "case stacked display" when she was "struck in the nose by another can. . . causing facial damage and a fractured nose." *Dillon-Garcia*, 2006 WL 302349, at *1 (internal quotation marks omitted). The Eighth District Court of Appeals reversed the trial court's grant of summary judgment for the retail defendant because the danger was not open and obvious as a matter of law. *Id*. at *3. There is a critical difference, however, between *Dillon-Garcia* and this case. In *Dillon-Garcia*, the customer "successfully removed [the] can *without affecting any of the cans in contact with it.*" *Id*. (emphasis added). Here, Weiss not only acknowledges that she hit the steel pipes with the piece of metal she sought to purchase, she also acknowledges that this contact caused the pipes to fall. (Doc. No. 76-1 ¶ 5.) Because Weiss' own actions caused the falling of the steel pipes, this case is not analogous to *Dillon-Garcia* or other cases, not cited by Weiss, like it. *See, e.g.*, *Weber v. Menard, Inc.,* No. 3:13-CV-229, 2014 WL 4965940, at *4 (S.D. Ohio Oct. 3, 2014) (denying summary judgment because, among other reasons, where "there is conflicting testimony about what happened immediately before" the merchandise fell on the patron

because "one would not necessarily expect [a piece of merchandise stored above] to fall *unless someone did something to dislodge it*") (emphasis added).

Lowe's did not owe a duty to Weiss for the open and obvious danger of the steel pipes stored above the Hillman display and, therefore, her premises liability claim must fail.

### B. Breach of Duty

Having already determined that Lowe's did not have a duty to warn Weiss about the open and obvious danger posed by the steel pipes, Weiss cannot satisfy the elements of a premises liability claim. Nonetheless, the Court will address Weiss' arguments related to Lowe's breach of its duty as a shopkeeper.[9] Weiss contends that "at the very least" there is a reasonable dispute as to whether "a Lowe's employee knew of the hazard and either failed to warn customers or remove it." (Doc. No. 76, at 12.) To support this contention, Weiss primarily relies on Ashmore's statements when he arrived to assist her that the steel pipes "never should have been stacked that way" and that their method of storage was "an accident waiting to happen." (*See id*.) In its reply, Lowe's contends that Weiss failed to produce evidence that the pipes were stacked in a dangerous manner and that "Weiss has no evidence that Lowe's had actual or constructive notice of the [steel pipe's] condition." (Doc. No. 78, at 5.) Due to this, Lowe's asks the Court to find, as a matter of law, that it did not breach its duty to Weiss, assuming for the sake of argument that it had one. (*Id*. at 6.)

Under Ohio law, a plaintiff can prove a breach of duty in a premise liability action by establishing that "(1) the defendant, through its officers or employees, was responsible for the hazard; (2) the defendant had actual knowledge of the hazard and neglected to promptly remove it

---

[9] In her opposition brief, Weiss incorrectly categorizes Lowe's arguments related to its "actual or constructive knowledge" of the steel pipes' storage as relating to the existence of a duty. (Doc. No. 76, at 11.) Whether a shopkeeper created, knew, or should have known about a hazard are inquiries relevant to the *breach* of duty, not the existence of a duty. *See Dorsey*, 2023 WL 2456587, at *16 (quoting *Ball v. New Era Golf BT Inc.*, No. 22CAE020014, 2022 WL 2236247, at *3 (Ohio Ct. App. June 21, 2022)).

or give adequate notice of its presence; or (3) the hazard existed for a sufficient length of time to reasonably justify the inference that the failure to remove it or warn against it was attributable to a lack of ordinary care." *Simmons v. Quarry Golf Club, L.L.C.*, 60 N.E.3d 454, 460 (Ohio Ct. App. 2016) (citing *Menifee v. Ohio Welding Products, Inc.*, 472 N.E.2d 707, 710 (Ohio 1984)). The third avenue of proving breach is often referred to as constructive knowledge. *See e.g.*, *Hutchison v. Lowes Home Centers*, *LLC*, No. 21-4048, 2022 WL 1773720, at *2 (6th Cir. June 1, 2022). The Court will first consider whether Lowe's was responsible for the alleged hazard posed by the steel pipes and then consider whether Lowe's had actual or constructive knowledge.

### 1. *Lowe's being responsible for hazard*

As a starting point, Weiss' amended complaint does not appear to allege that Lowe's created the hazard posed by the steel pipes. (*See* Doc. No. 12 ¶ 4 ("Defendants [*sic*] knew or should have known that Plaintiff was likely to be injured by the improperly placed pipes on the shelving in the store by Defendants [*sic*].") As it relates to breach of duty, Weiss' pleadings only mention the notice (either actual or constructive) that Lowe's allegedly had at the time of the incident. (*Id.*) Similarly, Weiss' opposition to Lowe's motion for summary judgment is silent on who was responsible for the alleged hazard posed by the steel pipes. (*See* Doc. No. 76, at 12 ("[A]t the very least, [Ashford's statements to Weiss after the incident] presents a reasonable dispute about whether a Lowe's employee knew of the hazard and either failed to warn customers or remove it."). Even if Weiss had raised this argument in its opposition, however, the Court would not be able to consider it. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (upholding a district court's refusal to consider arguments raised for the first time in a response to a motion for summary judgment). Weiss' decision not to pled or pursue this avenue of establishing a breach of duty is sufficient for the Court to determine that Lowe's was not responsible for the alleged hazard posed by the steel pipes.

Nonetheless, even if Weiss had clearly pled that Lowe's breached its duty by being responsible for the alleged hazard, this claim would fail as a matter of law because Weiss did not put forth any supporting evidence. According to Weiss' deposition testimony, there was only one other person in the aisle with the Hillman display when she arrived: an unidentified customer. (Doc. No. 55-5, at 12:18–13:8.) This customer was not near the Hillman display when Weiss entered the aisle and Weiss did not observe her touching any of its merchandise. (*Id*. at 13:3–5; 14:3–8.) At no point prior to her attempt to remove the piece of metal did Weiss observe any Lowe's employee touching any merchandise above or in the Hillman display. (*Id*. at 13:6–8.) Further, Weiss states that she did not observe what was above the Hillman display prior to removing the piece of metal, so she could not comment on the state of the steel pipes prior to their fall. (*Id*. at 16:20–17:5.)

Beyond what Weiss did and did not observe prior to the accident, she failed to produce evidence from another source (such as deposition testimony from a Lowe's employee or another customer) regarding the state of the steel pipes prior to her attempted retrieval of the metal pieces. Taken collectively, Weiss failed to produce any evidence on what the state of the steel pipes were prior to their fall and who was responsible for their state. *See Ray v. Wal-Mart Stores, Inc.*, 993 N.E.2d 808, 822 (Ohio Ct. App. 2013). In *Ray*, the Ohio Court of Appeals refused to adopt the plaintiffs' contention "that one of the [defendant's] employees must have left the [merchandise] in a hazardous location[]" when the plaintiff produced no factual evidence beyond the fact that at some point an unknown employee of defendant must have initially staged the merchandise within the display. *Id*. The court refused to adopt this view because such an inference "was not a reasonable one." *Id*.

Just like the merchandise at issue in *Ray*, the steel pipes in this case may have been bumped, moved, or rearranged by other customers. Although the steel pipes at issue here were likely less

accessible to customers due to their placement on an elevated wire rack, they were not totally out of reach. After all, Weiss openly admits that her own conduct altered the state of steel pipes. (*See* Doc. No. 76-1 ¶ 5.) With this lack of evidence, it would be pure speculation for a jury to determine that Lowe's was responsible for the state of the steel pipes immediately before Weiss' arrival.

For this reason, to the extent that Weiss claims that Lowe's breached its duty by being responsible the condition of the steel pipes prior to the incident, her claim fails as a matter of law.

### 2.  *Lowe's having actual or constructive knowledge of the alleged hazard*

Weiss failed to produce any evidence that Lowe's actually knew or should have known about the alleged hazard posed by the steel pipes. Beginning with actual knowledge, courts will find that a party knew of a hazardous condition when "the information was personally communicated to or received by the party." *Ball*, 2022 WL 2236247, at *4. When the party in question is a corporation, a finder of fact may reasonably determine that the corporation had actual knowledge if one of the corporation's employees recently walked through the area with the hazardous condition prior to the injury causing accident. *See, e.g.*, *Clark v. Wal-Mart Stores, Inc.*, No. 2:16-CV-463, 2018 WL 1512281, at *8 (S.D. Ohio Mar. 27, 2018). In *Clark*, one of the reasons the district court denied the retail defendant's motion for summary judgment was because, with the evidence available, a reasonable jury could find that the defendant had actual knowledge of the allegedly hazardous condition. *See id*. The court's based its findings, in part, on "security camera footage" which potentially showed that the defendant's "employee saw the precariously situated [merchandise] before the incident yet failed to remedy the situation or warn [the plaintiff] of the hazard[.]" *Id*.

Here, Weiss failed to produce any evidence that a Lowe's employee either directly observed, or was otherwise informed about, the allegedly dangerous stacking of the steel pipes. Unlike the evidence in *Clark*, there is no video recording of a Lowe's employee walking through

this particular aisle while the pipes were stacked in the same state as when Weiss arrived. (*See* Doc. No. 55-3, at 30:1–10 (Alexander confirming that "there [was] no camera down th[e] aisle[]" containing the Hillman display at the time of the incident).) Additionally, Weiss did not produce any evidence that a Lowe's employee was in the aisle containing the Hillman display at any point immediately prior to the incident.

Beyond nonexistent direct employee observations, Weiss also did not produce any evidence to suggest that another customer informed a Lowe's employee of the steel pipes allegedly perilous state. Weiss deposed multiple current and former Lowe's employees and the employees consistently stated that they either did not observe, or did not remember observing, the stacking of the metal pipes prior to the incident. (*See* Doc. No. 55-3, at 31:5–21 (Alexander confirming that she completed the "description" section of the incident report using the information provided by Weiss, Ashford, and Brock, not direct observation); Doc. No. 55-1, at 10:23–11:9 (Ashford stating that "from what I understand – again, I don't directly remember seeing anything[,]" and that he only entered the aisle after he heard the noise of the falling steel pipes); Doc. No. 55-2, at 6:25– 7:6 (McIlvain stating that he did not remember "if [he] was there when it happened or if [he] was called over by another employee."); Doc. No. 55-4, at 15:21–16:2 (Craig Starkey stating that he was on vacation when the incident occurred).) On these facts, no jury could reasonably determine that Lowe's had actual knowledge of the steel pipes allegedly hazardous arrangement prior to the accident involving Weiss.

Weiss' claim that Lowe's had constructive knowledge of the steel pipes' stacking fairs no better. Under Ohio law, for a plaintiff's claim that a premise owner had constructive knowledge of a hazardous condition to survive a motion for summary judgment, the plaintiff must first show how long the defect existed for. *See Ray*, 993 N.E.2d at 842 (citing *Sharp v. The Andersons, Inc.*, No. 06AP-81, 2006 WL 2259706, at *4 (Ohio Ct. App. Aug. 8, 2006)). "[I]f a plaintiff fails to

present evidence showing how long the alleged hazard existed, then the plaintiff cannot show that the defendant breached the standard of care[]" under this prong of the test. *See id.*; *see also Hutchison v. Lowes Home Centers, LLC*, No. 21-4048, 2022 WL 1773720, at *2 (6th Cir. June 1, 2022) (finding no breach of duty via constructive knowledge where there was no evidence about "how long the display had been in its current state[]").

Similar to the evidentiary deficiencies discussed above, Weiss did not know how long the steel pipes were in their allegedly hazardous condition prior to her attempted retrieval of the piece of metal. (Doc. No. 55-5, at 17:6–8 (responding "I have no idea" when asked if she knew "how long that pipe had been sitting there like that[]").) Additionally, Weiss did not produce any evidence from another source, such as a Lowe's employee, on how long the steel pipes were stacked in an allegedly hazardous condition prior to her arrival. Therefore, Weiss cannot prevail for breach due to Lowe's actual or constructive knowledge.

Weiss places great stock in Ashford's comments that the steel pipes "never should have been stacked that way" and that their arrangement "was an accident waiting to happen." (*See* Doc. No. 76, at 12.) Her reliance is misguided. Ashford's comments did not occur until *after* the steel pipes fell on Weiss. (Doc. No. 55-5, at 11:24–25.) Additionally, Ashford's after-the-fact comments do not suggest that he had observed the stacking of the steel pipes prior to Weiss dislodging them. Along the same lines, Ashford's deposition testimony does not suggest that he saw the present state of the steel pipes prior to Weiss' arrival either. In short, Ashford's comments and deposition testimony do not change the Court's analysis that Weiss produced no evidence that Lowe's had actual or constructive knowledge of the arrangement of the steel pipes prior to Weiss' accident.

For the foregoing reasons, even if Lowe's had a duty to warn Weiss, it did not breach that duty in this case.

### C.  Party Plaintiff Ohio Department of Medicaid's Claims

The Ohio Department of Medicaid ("ODM") filed a crossclaim in this action seeking the recovery of Weiss' medical expenses which were paid by the ODM in the event that she established Lowe's was liable for her injuries. (*See* Doc. No. 22.) Ohio Rev. Code § 5160.37(A) gives the ODM an automatic right of recovery of "against the liability of a third party for the cost of medical assistance paid on behalf of the recipient." If a court determines no liability exists, however, the ODM's claim fails. *See, e.g.*, *Parker v. Target Corp.*, No. 1:20-CV-364, 2022 WL 1748036, at *4 (S.D. Ohio May 31, 2022). Because Weiss' claims against Lowe's fail as a matter of law, so too must ODM's claim. ODM's claim is dismissed.

## IV.  CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment (Doc. No. 67) is granted. Weiss' claims against Lowe's are dismissed with prejudice and, without these claims, party plaintiff ODM's claims must also be dismissed. Thus, this case is dismissed.

**IT IS SO ORDERED**.

Dated: December 11, 2023

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**